# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**KYLE THISTLETHWAITE,**
**PATRICIA THISTLETHWAITE, and**
**PAUL THISTLETHWAITE,**

      **Plaintiffs,**

**v.**                                   **No. 14cv00138  WJ/RHS**

**ELEMENTS BEHAVIORAL HEALTH,**
**INC., a foreign corporation,**
**TRS BEHAVIORAL CARE, INC.,**
**d/b/a THE RIGHT STEP,**
**a foreign corporation, and**
**SAN CRISTOBAL TREATMENT**
**CENTER, LLC, a foreign limited liability company,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ELEMENTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
### and
### DENYING DEFENDANTS' MOTION TO STRIKE AFFIDAVITS

      **THIS MATTER** comes before the Court upon Defendant Element Behavioral Health Inc.'s ("Defendant Elements") Motion to Dismiss for Lack of Personal Jurisdiction[1], filed February 21, 2014 (**Doc. No. 8**) and Defendants Elements and San Cristobal Treatment Center's Motion to Strike Affidavits of Karen, House, John Tucker, and Paul Thistlewaite, filed April 29, 2014 (**Doc. No. 20**).  Having considered the parties' briefs, the argument presented at the hearing conducted on June 30, 2014, and the applicable law, the Court finds that Defendants' motions are not well-taken and, therefore, are DENIED.

---

[1] Defendant TRS Behavioral Care, Inc. had originally joined in the Motion to Dismiss, but withdrew its request for dismissal based upon lack of jurisdiction.  See (**Doc. No. 17**), Notice of Withdrawal.

**Background**

This lawsuit arises out of the treatment of Plaintiff Kyle Thistlethwaite ("Kyle") at Defendant San Cristobal Treatment Center (Defendant SCTC) in Taos, New Mexico.  Kyle's parents, Plaintiffs Patricia and Paul Thistlethwaite made an agreement with SCTC for ninety (90) days of treatment, from October 26, 2012 to January 23, 2013.  On January 7, 2013 Defendant SCTC closed its facility while Kyle still had three more weeks left of the agreed upon treatment.  Plaintiffs allege claims for breach of contract, intentional infliction of emotional distress based upon on allegations that the premature closing of SCTC.  Defendant SCTC is a subsidiary of Defendant TRS.  Defendant TRS, in turn, is a subsidiary of Defendant Elements.  Plaintiffs seek to enforce liability against Defendants TRS and Elements based upon an agency theory of vicarious liability.

*Allegations against Defendant Elements*

In addition to arguing that Defendant Elements is liable as the parent company for all of the acts of SCTC under agency principles, Plaintiffs also assert a claim of tortious interference with contract directly against Defendant Elements. Count II alleges tortious interference with the contract between SCTC and Plaintiffs.  See (**Doc. No. 1-1**), Complaint, ¶ 65.  Plaintiffs claim that Element had knowledge of the contract between SCTC and Plaintiffs and unlawfully interfered with the contract by shutting down the facility prior to the contract expiring.  See id., ¶¶ 66-69.

**Discussion**

I.    **Motion to Strike Affidavits**

Defendant TRS Behavioral Care, Inc. ("TRS") and Defendant San Cristobal Treatment Center (Defendant SCTC) filed a Motion to Strike Affidavits of Karen House, John Tucker, and

Paul Thistlethwaite on April 29, 2014 (**Doc. No. 20**).  The Motion requests that all of the affidavits attached to Plaintiffs' Response to the Motion to Dismiss be struck from the record.

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.  However, motions to strike are generally disfavored.  See Friends of Santa Fe County v. LAC Minerals, Inc., 892 F.Supp. 1333, 1343 (D.N.M. 1995) (citations omitted).  The decision to strike a pleading rests within the sound discretion of the district court.  Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 650 (D. Kan. 2009).  Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.  Id., 263 F.R.D. at 648-49.  "While Rule 56[(c)(4)] addresses affidavits submitted in support of or in opposition to summary judgment motions, its requirements of personal knowledge, admissible facts, and affirmative showing of competency apply to affidavits submitted in support of or in opposition to motions to dismiss on jurisdictional grounds."  Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175, n. 6 (10th Cir. 1992); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The Court will not strike all of the affidavits in their entirety, because it finds that some of the factual allegations are based upon personal knowledge and are otherwise admissible.  However, the Court notes Defendants' arguments regarding specific factual allegations raised in Plaintiffs' Response to the Motion to Dismiss.  The Court agrees that certain factual allegations contained in the affidavits are inadmissible as either irrelevant, not based upon personal knowledge, or hearsay.  Accordingly, the Court will not consider the inadmissible factual

allegations contained in the affidavits.  The Court will address Defendants' objections to the affidavits with greater specificity where the Court relies upon the affidavits.  Accordingly, Defendants' Motion to Strike is DENIED.

The Court now must consider the fact that Plaintiffs failed to file a timely Response to the Motion to Strike.  Pursuant to the local rules of this Court, Plaintiffs had fourteen (14) calendar days to respond to Defendant's Motion to Strike.  See D.N.M. LR-Civ 7.4 (a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion.").  Accordingly, Plaintiff's Response was due on May 13, 2014.  Plaintiffs did not file a notice of extension or a Response by the deadline.  On May 20, 2014, Defendants filed a Notice of Completion of Briefing noting Plaintiffs' failure to respond.  See (**Doc. No. 22**).  On June 5, 2014, nearly a month after their Response was due, Plaintiffs filed a Response to Defendants' Motion to Strike.  The Response itself contained no explanation for the delay.  Additionally, the Court inquired about the cause for Plaintiffs' untimely response at the hearing conducted on this matter.  To his credit, Plaintiffs' counsel stated that he did not have an excuse and he is aware that the Response was not filed within the time prescribed by the local rules.  The Court finds Plaintiff's counsel honest and straightforward response admirable, nevertheless Defendants' attorneys expended time, which will presumably result in fees charged, as a result of Plaintiffs' failure to respond.  Further, it would be unfair for the Court to consider Plaintiff's untimely response without repercussions to Plaintiffs for their counsel's failure to comply with the local rules of this Court.

The Court would be within its discretion to grant the Motion to Strike solely on the basis of Plaintiffs' failure to file a response.    See D.N.M. LR-Civ 7.1 (b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so

constitutes consent to grant the motion.").   However, because the affidavits provide the only support for Plaintiffs' claim of personal jurisdiction, striking the affidavits would essentially amount to dismissing the claims against Defendant Elements.   The Court does not believe dismissal is an appropriate remedy for Plaintiffs' failure to respond.   See Hancock v. City of Okla. City, 857 F.2d 1394, 1396 (10th Cir.1988) ("[A] dismissal for violation of the local rule [i]s a severe sanction reserved for the extreme case, and is only appropriate where a lesser sanction would not serve the ends of justice.").   The Court believes a monetary sanction will suffice to dissuade counsel from failing to respond in a timely manner to future filings, specifically in instances where he eventually expects to be heard on the motion. "A district court undoubtedly has discretion to sanction a party [] for failing to comply with local or federal procedural rules."   Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir.2002).   Fed.R.Civ.P. 83 allows each United States district court the latitude to promulgate its own rules regarding its practice as long as these local rules do not conflict with the federal rules.   Hernandez v. George, 793 F.2d 264, 266 (10th Cir.1986).   "Considerable deference is accorded to the district court's interpretation and application of their own rules of practice and procedure."   Id.   Sanctions are available to permit the court to "manag[e] its docket and avoid[ ] unnecessary burdens on the tax-supported courts, opposing parties or both."   Mulvaney v. Rivair Flying Serv., Inc. (In re Baker ), 744 F.2d 1438, 1441 (10th Cir.1984).

Therefore, the Court awards Defendant Elements attorneys' fees in the amount of $500.00 as a sanction against Plaintiffs for failing to comply with the local rules regarding filing a response.   Plaintiffs' counsel will be responsible for payment of the sanction as there is no indication that the delay was caused by the Plaintiffs themselves and the Court would not expect the individual Plaintiffs to be familiar with the local rules of this Court.

## II.     Motion to Dismiss

### A.     *Legal Standard*

A motion to dismiss is an appropriate procedural vehicle for resolving personal jurisdiction and venue issues. See Fed.R.Civ.P. 12(b)(2) & (3).   Affidavits, depositions, answers to interrogatories, and similar evidentiary matter may be presented and are freely considered on a motion attacking jurisdiction. See Sunwest Silver, Inv., v. Int'l Connection, Inc., 4 F.Supp.2d 1284, 1285 (D.N.M. 1998); Jones v. 3M Company, 107 F.R.D. 202, 204 D.N.M. 1984).  Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum, which in this case is New Mexico.  Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted).  Plaintiffs have the burden of establishing personal jurisdiction over Defendant Elements. See Kuenzle v. HTM Sport-Und Freizeitgeräte AG, 102 F.3d 453, 456 (10th Cir.1996).   Plaintiffs meet their burden at the pre-trial motion stage if they make a *prima facie* showing that personal jurisdiction exists. Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S. 1010 (1985). The Court accepts Plaintiffs' allegations in the complaint as true if Defendant Elements does not contest them with affidavits or other materials, and resolves all factual disputes raised by conflicting affidavits in the Plaintiffs' favor.  Id., at 733.

New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-residents.  The Court must determine whether:  (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute;[2] (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due

---

[2]    Section 38-1-16, N.M.S.A.1978 provides that a person who does any of the enumerated acts submits himself to the jurisdiction of the courts of this state as to any cause of action arising from:
(1) the transaction of any business within this state;  [and] . . .
(3) the commission of a tortious act within this state . . . .

process concerns.  Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. 312, 318

(2002).   Minimum contacts with the forum state may be established through either general or

specific jurisdiction.   When the defendant has continuous and systematic general business

contacts with the forum state, courts in that state may exercise general jurisdiction over the

defendant.  See Purple Onion Foods, Inc. v. Blue Moose of Boulder, 45 F.Supp.2d 1255 (D.N.M.

1999); Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 414-15 (1984).  When

the defendant has purposely directed its activities at residents of the forum, courts in that state

may exercise specific jurisdiction in cases that "arise out of or relate" to those activities.

Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 455 (10th Cir. 1996).   However,

both general and specific personal jurisdiction  require a showing that the exercise of jurisdiction

would not "offend traditional notions of fair play and substantial justice."  Alto Eldorado P'ship

v. Amrep, 2005-NMCA-131, ¶31, 138 N.M. 607, 618, 124 P.3d 585, 596.  This determination is

made by balancing five factors: "the burden on the defendant, New Mexico's interest, the

plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public

policy."  Zavala v. El Paso Cnty. Hosp. Dist., 2007-NMCA-149, ¶12, 143 N.M. 36, 172 P.3d 173

(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985)).

        Here, the personal jurisdiction analysis is made more complex by the fact that Elements

is a parent company rather than a direct participant in the care that Kyle received at SCTC.

Under New Mexico law, it is well established that the parent and subsidiary relationship is not

enough to support a finding of personal jurisdiction over Defendant Elements.   "A basic

proposition of corporate law is that a corporation will ordinarily be treated as a legal entity

separate from its shareholders. Shareholders can thus commit limited capital to the corporation

with the assurance that they will have no personal liability for the corporation's debt. *A*

*subsidiary and its parent corporation are also viewed as independent corporations.*"   Scott v. AZL Resources, Inc., 1988-NMSC-028, ¶ 6, 107 N.M. 118, 121, 753 P.2d 897, 900 (emphasis added); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1343 (D.N.M. 1994) ("the governing presumption is that 'the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.'"); and Alto Eldorado, 2005-NMCA-131, ¶ 32 ("As a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state.").   Courts only disregard the corporate entity in special circumstances.  See Scott, 107 N.M. at 121, 753 P.2d at 900.

There are usually only two situations where the court may properly invoke jurisdiction over a parent company predicated on the acts of one of its subsidiaries.  "First, if the parent's control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is "so complete as to render the subsidiary an instrumentality of the parent," Cruttenden v. Mantura, 1982-NMSC-021, 97 N.M. 432, 434, 640 P.2d 932, 934, citing Edgar v. Fred Jones Lincoln Mercury, 524 F.2d 162, 166 (10th Cir.1975), the Court may deem the subsidiary the mere "alter ego" of the parent, and accordingly, may pierce the corporate veil. Cruttenden, 97 N.M. at 434, 640 P.2d at 934.  "Alternatively, if the subsidiary does an act at the direction of the parent, or in the course of the parent's business, the Court may characterize the subsidiary as an agent of the parent and thereby hold the parent answerable as a principal."  Restatement (Second) of Conflicts of Laws § 562 cmt. b (1971); Allen v. Toshiba Corp., 599 F.Supp. 381, 389 (D.N.M.1984); Jemez, 866 F. Supp. at 1343 ("A second theoretical basis for acquiring personal jurisdiction over [the parent company] consists of evaluating whether the subsidiaries were

acting as [the parent company's]  agent in terminating the COMPAR program, an act giving rise to this litigation.")

### B.     Discussion

*Long Arm Statute*

As previously stated, the first step in the New Mexico personal jurisdiction test is whether the non-resident committed an act or omission falling under the long arm statute.  Here, Plaintiffs allege that Defendant Elements committed a tortious act within New Mexico, namely choosing to close the facility while the facility's patients were still under contract.  Defendant attempts rebut this argument in two ways: 1) there is no admissible evidence that Defendant Elements made the decision to the close the facility; and 2) the tortious act did not occur in New Mexico.

In regards to evidence that Defendant Elements made the decision to close the facility, the Court looks to the affidavit of John Tucker, the Executive Director of SCTC.  In his affidavit, John Tucker states that "[o]n January 2, 2013, Julie Denofa of TRS told me that the Elements' Board of Directors had made the decision to immediately close the program at SCTC."  See **(Doc. No. 13-3)**, Affidavit of John Tucker attached as Exhibit 3 to Plaintiff's Response, at ¶19. Defendant Elements had moved to strike the entire affidavit, but when questioned about this specific statement, counsel for Defendant Elements admitted that this would be a statement by a party-opponent, which is excepted from the definition of hearsay under Fed. R. Evid. 801(d)(2)(b).  Accordingly, Plaintiffs have offered some evidence that Defendant Elements committed a tortious act.  Further, at the hearing, counsel for Defendant Elements argued that because the decision to close the facility was purely a financial one, rather than a decision directed at harming any patients, Defendant Elements should not be subject to personal

jurisdiction; thereby demonstrating that Defendant Elements was in fact the decision maker in regards to the closure of SCTC.

Alternatively, Defendant Elements argues that the decision to close the facility cannot be the basis for personal jurisdiction because the decision did not take place in New Mexico. This argument fails under New Mexico law. For purposes of the long-arm statute, a "tortious act" can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico. See Peralta v. Martinez, 90 N.M. 391, 393, 564 P.2d 194, 196 (Ct.App.1977). This is the "place-of-the-wrong" rule as accepted by New Mexico's Supreme Court. Cronin, 2000-NMCA-082, ¶ 18, 129 N.M. 521, 10 P.3d 845. The place of the wrong is "the location of the last act necessary to complete the injury." Id. at 613, 894 P.2d at 390. Although the act, the decision to close the facility, took place in another state, the injury, the closing of the facility, manifested itself in New Mexico. Therefore, Defendant Elements' act satisfies the long arm statute.

*Cause of action*

It is clear that in this instance, the act under the long-arm statute, the decision to close the facility, is what is alleged to have caused the injury. The entire case is based upon the harm that allegedly came about from the closure of the facility while Kyle was still under contract and was still completing treatment. Accordingly, Plaintiffs have met the second step of personal jurisdiction.

*Minimum Contacts*

As discussed previously, there are two possible bases for minimum contacts, specific and general. Plaintiffs attempt to show, through affidavits, that Defendant Elements' contact with SCTC satisfies the standard for general jurisdiction. Plaintiffs' general jurisdiction argument

fails for a number of reasons.  First, Plaintiffs' affidavits contain a number of factual errors[3], for example identifying Jonathon Ross as an employee of Defendant Elements even though he is a TRS employee, and stating Defendant Elements' Vice President of the Risk Managements Division visited SCTC even though Defendant Elements has no such position.    Even setting aside these factual errors, the Court finds there is simply not enough evidence to show that Defendant Elements had "continuous contact" with the state of New Mexico.  Accepting all of Plaintiffs' factual allegations as true, Plaintiffs have only shown that a number of Defendant Elements employees visited SCTC several times over a period of months.  There is no indication that Defendant Elements was extensively involved in the day to day operations at SCTC or that Defendant Elements directly managed any of SCTC business affairs.  Accordingly, the Court finds that minimum contacts cannot be established through general jurisdiction.

In the alternative, Plaintiffs also argue that Defendant Elements' contact with New Mexico meets the test for specific jurisdiction.   A state has specific jurisdiction over a nonresident defendant if that defendant's contacts do not rise to the level of general jurisdiction, but the defendant nevertheless "purposefully established contact with New Mexico." Zavala, 2007–NMCA–149, ¶ 12 (alteration, internal quotation marks, and citation omitted). In other words, "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Sproul v. Rob & Charlies, Inc., 2013-NMCA-072, 304 P.3d 18, 25.  The central feature of minimum contacts, then, is the requirement of purposeful availment. Id.  To determine "purposeful availment," the Court must look at what activities the defendant directed

---

[3]   The Court is required to resolve all disputes of fact in Plaintiffs' favor.  Thus, if it was simply a matter of Defendant Elements stating that these allegations were untrue, the Court would still have to accept Plaintiffs' version of the facts.  However, counsel for Plaintiffs admitted at the hearing that these factual statements in the affidavits were incorrect.

toward New Mexico. Zavala, 2007–NMCA–149, ¶ 11, 143 N.M. 36, 172 P.3d 173.   ],” New Mexico will have jurisdiction only if the cause of action arose out of the contacts with New Mexico. Id. (citation omitted).

The Court finds that Defendant Elements' decision to acquire and ultimately shut down SCTC is sufficient to establish specific jurisdiction.  Defendant Elements purposefully availed itself of the laws of New Mexico by choosing to acquire a facility located in New Mexico.  It took advantage the laws surrounding the healthcare sector in New Mexico while gaining profits from the facility located here.  Its contacts with New Mexico are the basis for the Complaint. Moreover, this is precisely the situation where the Court can assert jurisdiction over a parent company for actions of the subsidiary, because the act giving rise to the Complaint was done at the behest of the parent company.  In Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1346 (D.N.M. 1994), this Court noted that it would be proper to assert personal jurisdiction where the act alleged to have caused the harm was done by the subsidiary at the direction of the parent company.  Ultimately, the Jemez court concluded the parent company could not be held responsible because the decision to shut down a particular program was made by the subsidiary and simply approved of by the parent company.  Id., at 1346.  Here, the opposite is true.  The decision leading to the harm originated with Defendant Elements and of course the SCTC had no choice but to close when the parent company chose to shut it down.

*Fair Play and Justice*

The Court is to consider five factors in regards to "fair play and justice": the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy. Zavala,  2007–NMCA–149, ¶ 12.

Defendant has not articulated specific bases for the burden on it.  Although litigation in any state other than where the company is based is a burden, there is no evidence New Mexico as a venue will be especially hard for Defendant Elements.  New Mexico has an interest in ensuring that those who run companies in New Mexico, own and make decision regarding them, are responsible to the citizens of the New Mexico.  Plaintiffs are residents of New Mexico and they want this matter litigated here.  Further, the contract was contemplated to be executed in New Mexico.  Plaintiffs did not likely anticipate that an out of state party would affect their contract with SCTC.  In the interests of an efficient judicial system, the remainder of the case will be litigated in New Mexico, thus it would conserve resources to litigate this matter only once.  New Mexico has the most direct relationship with the facts at issue in the Complaint.  Further, the interest of public policy would be promoted by having Defendant Elements answer for its alleged wrongs in New Mexico.  As noted above, there is a reason to treat Defendant Elements as more closely related to its subsidiary SCTC than is generally warranted because SCTC was closed at Defendant Elements' decision.  The Court is further convinced that justice would be served by asserting personal jurisdiction over Defendant Elements given the nature of the business at issue.  While a nationwide supermarket chain may choose to close one of its subsidiaries with little effect on the state itself, the facility here was a daily caregiver to a number of patients who had to find a new facility when Defendant Elements chose to shut it down.  Its actions directly impacted citizens in New Mexico.

Accordingly, the Court finds that there is personal jurisdiction over Defendant Elements. The Court recognizes that Defendant Elements strenuously objected to it being subject to the jurisdiction of this Court and quite frankly, this Court had a difficult time reaching its final decision because the issue of personal jurisdiction over Defendant Elements was a close call.

13

However, Plaintiffs' burden at the personal jurisdiction stage is not great, and they have made a *prima facie* showing of personal jurisdiction.

   **THEREFORE, IT IS ORDERED** that Defendant Element Behavioral Health Inc.'s ("Defendant Elements") Motion to Dismiss for Lack of Personal Jurisdiction **(Doc. No. 8)** is DENIED and that Defendants Elements and SCTC's Motion to Strike Affidavits of Karen, House, John Tucker, and Paul Thistlewaite **(Doc. No. 20)** is DENIED.

   **IT IS FURTHER ORDERED,** that Plaintiffs' counsel shall pay Defendant Elements $500.00 in attorneys' fees for failing to file a timely Response to Defendant's Motion to Strike.

_____
UNITED STATES DISTRICT JUDGE