IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KYLE THISTLETHWAITE,
PATRICIA THISTLETHWAITE, and
PAUL THISTLETHWAITE,

    Plaintiffs,

v.                                                                                   Case No. 14cv00138 WJ/RHS

ELEMENTS BEHAVIORAL HEALTH,
INC., a foreign corporation,
TRS BEHAVIORAL CARE, INC.,
d/b/a THE RIGHT STEP,
a foreign corporation, and
SAN CRISTOBAL TREATMENT
CENTER, LLC, a foreign limited liability company,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS OF NEGLIGENCE

THIS MATTER comes before the Court upon a Motion for Partial Summary Judgment on Plaintiffs' Claims of Negligence filed on February 2, 2015 by Defendants Elements Behavioral Health, Inc. ("Elements"), TRS Behavioral Care, Inc. ("TRS") and San Cristobal Treatment Center, LLC ("SCTC") ("Defendants") **(Doc. 47)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is well-taken and, accordingly, it is GRANTED.

### BACKGROUND

SCTC and TRS provided drug addiction treatment services to Plaintiff Kyle Thistlethwaite ("Kyle"), the son of Plaintiffs Patricia Thistlethwaite ("Patricia") and Paul

Thistlethwaite ("Paul").  Kyle, age 19, enrolled in a voluntary treatment program at SCTC.  In exchange for the payment of $40,000, paid by Patricia and Paul, Kyle enrolled in a 90-day inpatient drug addiction treatment program beginning October 26, 2012.  Kyle completed and signed all admissions paperwork.  On January 2, 2013, SCTC and TRS announced that SCTC would cease operations. SCTC ceased operations five days later on January 7, 2013, 16 days short of the 90-day treatment term. The closure of SCTC is the basis for all claims against Defendants.  Plaintiffs allege that the closure harmed Kyle physically and emotionally as the closure improperly interfered with his ongoing drug addiction treatment and that the early closure caused Kyle to relapse.  Finally, Plaintiffs allege that the relapse caused emotional harm to Patricia and Paul.

The complaint asserts nine claims:

Count One:     Breach of Contract
Count Two:     Tortious Interference with Contract
Count Three:   Fraud
Count Four:    Negligent Misrepresentation
Count Five:    Intentional Infliction of Emotional Distress
Count Six:     Negligent Infliction of Emotional Distress
Count Seven:   Medical Negligence
Count Eight:   Negligence
Count Nine:    Unjust Enrichment

Count Seven, which alleges medical negligence, has been dismissed on Plaintiffs' unopposed motion.  Doc. 46.

**DISCUSSION**

In this motion, Defendants seek summary judgment on Plaintiffs' negligence claim alleged in Count Eight.  Defendants specifically contend that Patricia and Paul cannot support their claims of negligence as a matter of law because they are not claiming physical injury and are seeking purely economic damages.  In addition, Kyle cannot support his negligence claim as

2

a matter of law because he lacks evidence to prove up all requisite elements of the claim.

## I.      Legal Standard

Defendants are entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The primary purpose of Rule 56 is to determine whether genuine factual issues exist which require resolution by the fact finder such that a trial is necessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Defendants bear the initial burden of showing the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670- 71 (10th Cir. 1998). Defendants can meet this burden by pointing out to the Court that there is an absence of evidence to support Plaintiffs' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this burden is met, Plaintiffs must present specific record evidence showing that a genuine issue exists for trial on those dispositive matters on which they have the burden of proof. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); see Fed. R. Civ. P. 56(c)(1) (the party opposing summary judgment must cite to particular materials in the record to support claims of disputed issues of fact). A mere "scintilla" of evidence in Plaintiffs' favor is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252. Summary judgment is properly granted where a rational trier of fact, considering the record as a whole, could not find for Plaintiffs. *Matusushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs have filed no response to Defendants' motion.[1]  By failing to file a response to a Rule 56 motion, a nonmoving party waives the right to file a response and confesses all facts asserted and properly supported in the motion. *Murray v. City of Tahlequah*, 312 F.3d 1196,

---

[1] The parties agreed to an extension of time for responding to Defendants' motions until March 2, 2015 (Doc. 53). Defendants filed a Notice of Briefing Complete on March 6, 2015  Doc. 60.

1199 (10th Cir. 2002). This means that if Defendants as movants satisfy their burden of showing that no material issues of fact exists and present evidence to support those facts, Defendants are entitled to summary judgment. *Id.; see also* D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion").

## II.     Undisputed Facts[2]

The source of any legal duty owed to Patricia and Paul originates exclusively out of contract. Patricia and Paul are not alleging personal injury damages but rather, seek damages for economic injury. The source of any legal duty owed to Kyle originates out of contract and upon allegations that Defendants owed a duty to care for Kyle's safety. Kyle alleges that he suffered physical injury as a result of the breach of duty, including a claimed "relapse after the premature closure of his treatment program at San Cristobal."

As of October 13, 2014, Plaintiffs advised Defendants that they intended to withdraw the medical negligence claim, and did not intend to use an expert witness on any of the remaining claims. Ex. C (e-mail correspondence from Plaintiff's counsel). Plaintiffs did not serve expert witness disclosures, including summary disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C). In discovery, Plaintiffs indicated that they "will not call any expert witnesses." See Answer to Interrogatory No. 24, attached hereto as Exhibit E. Karen House was Kyle's former therapist and was disclosed as a lay witness in discovery.

The Court considers these facts to be undisputed, based on Plaintiffs' failure to respond and on the exhibits presented by Defendants in support of these facts.

## III.    Defendants' Position and Plaintiffs' Allegations

---

[2] All facts presented here are supported by evidence presented by Defendants in their supporting Exhibits A through E, which consists of Plaintiffs' Answers to discovery requests. However, the Court omits references to these exhibits, except where necessary.

Defendants seek summary judgment on Plaintiffs' claims of negligence on three separate grounds: (1) Patricia's and Paul's claims of negligence are barred by the economic loss rule; (2) Patricia's and Paul's claims of negligence are barred because they did not suffer a requisite physical injury; and (3) Kyle's negligence claim is barred because he cannot establish Defendants owed Plaintiffs a legal duty outside of the medical negligence context, and because Kyle does not have a medical expert who can establish the necessary elements or a medical negligence claim.

Negligence as a cause of action requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages. *Herrera v. Quality Pontiac,* 134 N.M. 43, 48 (2003). In their Complaint, Plaintiffs allege the following in support of their negligence claims:[3]

- "Defendant SCTC had a contractual duty to provide residential treatment services to Plaintiff Kyle T. through its residential treatment program in San Cristobal."

- "Defendant SCTC did not act in a reasonably prudent manner when it shut down its treatment program prior to the program's contractual duration and completion."

- "Defendant SCTC either knew or should have known that shutting down its treatment program before the contractual duration and completion of the program by Plaintiff Kyle T. would result in an unreasonable amount of risk or injury, either physical or psychological to Plaintiff Kyle T."

- "Plaintiffs, including Plaintiff Kyle T., suffered damages proximately caused by Defendant SCTC's negligence."

- "Defendant Elements is liable for the tortious conduct of its subsidiaries…under theories of apparent agency or vicarious liability."

- "Defendants Elements and TRS in some form or fashion participated in, authorized, or ratified Defendant SCTC's premature shutting down of its facility."

---

[3] Plaintiffs' failure to respond to Defendants' motion leaves Defendants as well as the Court, with no recourse other than to consider the allegations in the pleadings thus far.

- "Some of the harm suffered by Plaintiff Kyle T. as a result of Defendants' reprehensible conduct was physical, as opposed to economic."

*See* Defts' Statement of Fact ("SOF") 1 (citations to Complaint). Also, in relation to any duty owed to Kyle, Plaintiffs claim that:

> SCTC, by virtue of accepting Plaintiff Kyle Thistlethwaite as a patient at its facility, at the very least **owed Plaintiff Kyle Thistlethwaite a duty to exercise ordinary care for his safety.** Plaintiffs contend that a reasonably prudent person, in the exercise of ordinary care, would not shut down a residential treatment facility for young men with addiction issues prior to the completion of treatment, In New Mexico, "[t]he economic loss rule precludes recovery in tort for purely economic losses where the claims alleged are based on breach of an express or implied contractual duty." *Bull v. BGK Holdings, LLC*, 859 F.Supp.2d 1238, 1243 (D.N.M. 2012) (citing to Utah Int'l, Inc. v. Caterpillar Tractor Co., 108 N.M. 539, 542, 775 P.2d 741 (Ct. App. 1989)). The economic loss rule precludes Plaintiffs from using "tort law to alter or avoid the bargain struck in the contract." *BGK Holdings*, 859 F.Supp.2d at 1243 (citing *In re Consolidated Vista Hills Retaining Wall Litigation,* 119 N.M. 542, 551, 893 P.2d 438 (1995)); and *see Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F.Supp.2d 1167, 1174 (D. N.M. 2006) (applying the economic loss rule to service contracts acknowledging "New Mexico court's commitment to the distinction between tort and contract law.")as a reasonably prudent person would foresee that such an action would significantly enhance the risk of relapse for such young men . . . .

*See* Defts' SOF 4, Ex. B (emphasis added).

**IV.    Patricia's and Paul's Negligence Claims**

Defendants contend that Patricia's and Paul's negligence claims fail because they are barred by the economic loss rule. They also contend that the claims are legally deficient because neither Patricia nor Paul is claiming physical injury.

A.    <u>Patricia's and Paul's Negligence Claims:  Economic Loss Rule</u>

Defendants claim that the negligence claims asserted by Patricia and Paul are barred by the economic loss rule. In New Mexico, the economic loss rule "precludes recovery in tort for purely economic losses where the claims alleged are based on breach of an express or implied contractual duty." *Bull v. BGK Holdings, LLC*, 859 F.Supp.2d at 1243 (citing to *Utah Int'l, Inc.*

*v. Caterpillar Tractor Co.*, 108 N.M. 539, 542 (Ct. App. 1989)). The economic loss rule precludes Plaintiffs from using "tort law to alter or avoid the bargain struck in the contract." *BGK Holdings*, 859 F.Supp.2d at 1243 (citing *In re Consolidated Vista Hills Retaining Wall Litigation,* 119 N.M. 542, 551, 893 P.2d 438 (1995)); *see Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F.Supp.2d 1167, 1174 (D. N.M. 2006) (applying the economic loss rule to service contracts acknowledging "New Mexico court's commitment to the distinction between tort and contract law").

Defendants contend that Plaintiffs are attempting to prove up a negligence claim based on a contractual duty, and the Court comes to the same conclusion. The only "duty" alleged by Plaintiffs is a contractual duty. *See* Compl., ¶ 179 (describing Defendant's "duty" in the *negligence* count as a "*contractual* duty to provide residential treatment services to [Kyle] . . . ."). Patricia and Paul allege that Defendant SCTC entered into a contract to provide drug addiction treatment counseling to their son Kyle, and that they breached this contractual duty by closing its facility "prior to the program's contractual duration and completion." Compl., ¶¶ 182, 183.[4] Based on their assertions and the damages they seek, Patricia's and Paul's claims of negligence arise solely from their economic losses, for which they claim the following:

- $137,500 incurred by Patricia and Paul Thistlethwaite for "Plaintiff Kyle Thistlethwaite's post-San Cristobal treatment at Real Recovery . . . from January of 2013 through to September of 2014," which includes $9,522.00 paid to Karen House.

- $7,500 incurred by Patricia and Paul Thistlethwaite for "services of a criminal defense attorney in Spartanburg, South Carolina related to the arrest of Plaintiff Kyle Thistlethwaite."

- $1,700 incurred by Patricia and Paul Thistlethwaite for "a bonding company in connection with their son's arrest."

- $40,000 incurred by Patricia and Paul Thistlethwaite for "the treatment of their son at

---

[4] In fact, the Court would go as far to say that this lawsuit has all the earmarks of a contract dispute—and nothing more.

      Defendant SCTC's facility."

- $60,000 in anticipated future expenditures for sober living services and therapy sessions for Kyle Thistlethwaite for another 12 months.

Ex. A (Pltffs' Ans. to Interrog. 21).  All of these damage claims are "due to the closure of San Cristobal Treatment Center," and "due to the alleged breach of contract."  *Id.*  Patricia and Paul have not pled or articulated a duty of care owed by Defendants outside of the contractual agreement, which places these negligence claims squarely within the bar of the economic loss rule.  While the Court finds that Plaintiffs are precluded from recovering their claimed damages under a tort theory, Plaintiffs are not necessarily barred from recovering these alleged damages under a contract theory.  *See BGK Holdings*, 859 F.Supp.2d at 1243 (The economic loss rule does "not bar the recovery of economic loss damages; rather, the rule bars recovery of such damages under a tort cause of action").

B.    <u>Patricia's and Paul's Negligence Claims: No Physical Injury</u>

    In addition to the economic loss bar, Defendants argue that the negligence claims asserted by Patricia and Paul are legally deficient because they claim only emotional injuries; neither claims physical injuries.  Defendants contend that Plaintiffs cannot recover on their negligence claims because New Mexico only permits recovery for emotional injuries caused by negligence if the conduct at issue also caused a physical injury.

    Generally speaking, damages for emotional distress in ordinary negligence actions are not permitted in New Mexico.  *Flores v. Baca*, 117 N.M. 306 (1994).  New Mexico allows recovery for stand-alone emotional distress only in limited circumstances, including intentional infliction of emotional distress, in connection with certain intentional economic torts, and in contractual situations where the specialized nature of the contract naturally contemplated that reasonable care would be taken to avoid the infliction of severe emotional distress.  *See Jaynes v. Strong*

*Thorne Mortuary, Inc.*, 124 N.M. 613 (1998) (stating that "[i]ntentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct"); *Flores*, 117 N.M. at 311 (stating that courts permit recovery for mental anguish caused by breach of contract in cases in which the purpose of the contract would be frustrated unless such damages were awarded, for example in a contract for funeral services); *see also Castillo v. City of Las Vegas*, 145 N.M. 205, 210 (N.M.App., 2008) (concluding that a plaintiff may not recover for emotional distress based solely on a claim for negligent damage to property).

Plaintiffs have separately alleged claims of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"), and the Court has already determined that these claims have no merit, granting Defendants summary judgment on those claims. *See* Doc. 69 (Court's Mem. Opin. & Order). Plaintiffs' failure to present evidence on their IIED and NIED claims eliminates any possibility of their negligence claims advancing any further. Defendants are therefore entitled to summary judgment on the negligence claims asserted by Patricia and Paul.

**V.     Kyle's Negligence Claim**

Kyle alleges that Defendants had a contractual duty to provide drug addiction treatment services to him for at least 90 days. Complaint, ¶ 179 & Ex. B (Ans. to Interrog. 16). Kyle further alleges that Defendants had a duty to keep him safe as part of their duty to provide drug addiction treatment services. *Id.* Unlike his parents, Kyle alleges that he suffered a physical injury as a result of a breach of duty and "[s]ome of the harm suffered . . . was physical, as opposed to economic." Compl., ¶¶ 34, 35 and 190.

A.     Nature of Kyle's Negligence Claim

Defendants advance the theory that Kyle's claim is not based on ordinary negligence, and must be alleged as a medical negligence claim. Defendants also argue that a medical expert is required in order to provide evidence of a breach in the standard of care. In *Richter v. Presbyterian Healthcare Services,* the New Mexico Court of Appeals discussed the difference between "medical or professional negligence claims" and ordinary negligence claims. The court adopted a "functional test" to distinguish between the two, holding that in order to support a finding of professional services:

> [s]omething more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind . . . .In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself. In *Richter,* the court held that "[i]f the act involves the use of specialized knowledge or skill to make a judgment call as to the appropriate thing to do or not do, expert testimony will likely be needed to assess the resultant act or failure to act. If not, expert testimony is not required." 326 P.3d at 56.

326 P.3d 50, 56 (N.M.Ct.App. 2014). In utilizing a "functional test," the court in *Richter* distinguished two types of conduct, one that required expert testimony and one that did not. In that case, allegations that an established routine procedure was violated regarding the delivery of laboratory reports (e.g., who a laboratory report should be delivered to), would not require expert testimony because no professional interpretation would be necessary. However, expert testimony *would* be required to establish negligence regarding the timing of the delivery of the laboratory reports because professional judgment is necessary to establish any urgency of the dangers involved for allegations of delay and likelihood of harm to the patient. 326 P.3d at 57. In this case, Plaintiff contends that:

> Kyle Thistlethwaite was . . . a young man with addiction issues and a past history of suicide attempts that was either known or should have been known to Defendant SCTC. Defendant SCTC, as Plaintiff Kyle Thistlethwaite's **treatment provider,** knew or should have known that Plaintiff Kyle Thistlethwaite had

10

>major trust issues which had previously hampered his recovery and that in the few weeks immediately prior to the announced closure, Plaintiff Kyle Thistlethwaite had made major gains developing trusting relationships with his therapist and fellow residents. Defendant SCTC knew or should have known that given these facts and circumstances, Plaintiff Kyle Thistlethwaite was in an extremely vulnerable position, **more so than the average patient with addiction issues** at San Cristobal. Defendant SCTC knew or should have known that prematurely shutting down its facility would have disastrous consequences for someone as vulnerable as Plaintiff Kyle Thistlethwaite.

Ex. B (Ans. to Interrog. No. 16) (emphasis added).  Based on these allegations, it is clear that Kyle is asserting claims against a medical treatment provider for a patient requiring drug addiction treatment services, and that a professional negligence standard applies under *Richter*.

The Court finds that Defendants' position stands on solid legal ground.  Despite Kyle's label of his claim as ordinary negligence, Kyle is proceeding on a theory of medical negligence. *See Kanter v. Metro. Med. Ctr.*, 384 N.W.2d 914, 916 (Minn. Ct. App. 1986) (the court did not abuse discretion in requiring expert testimony to establish negligence of nurse providing care to a suicidal patient because "potential tendencies of patients suffering from mental illness" are not easily determined "without special training and knowledge").  The wrongful act at issue here is the premature closing of the SCTC facility.  Kyle claims that in closing the facility, SCTC knew of should have known that it would cause harm to Kyle because of his drug addiction issues and trust issues.  This necessarily brings into question a heightened knowledge that SCTC was expected to utilize in order to avoid harm to Kyle.  Having determined the nature of Kyle's negligence claim, the next question is what is kind of testimony is required to prove that claim, which the Court addresses next.

B.    Karen House as "Treating Physician"

As just discussed, Kyle must satisfy the elements of a medical negligence claim and show that Defendants owed him a duty recognized by law, that the Defendants breached the duty by

11

departing from the proper standard of medical practice recognized in the community, and the breach was a cause of Kyle's claimed relapse. *See Blauwkamp v. University of New Mexico Hosp.*, 114 N.M. 228, 231 (Ct.App. 1992).  Defendants contend that, based upon Kyle's allegations and his claimed damage, Kyle will require expert testimony to establish 1) the proper standard of care for a drug addiction treatment facility that closes its operations, and 2) that the relapse claimed by Kyle was caused by a breach of the standard of care. *See Pharmaseal Labs, Inc. v. Goffe*, 90 N.M. 753, 758 (1977) (expert testimony is required when a layperson is presumed to be uninformed as to the standard of care; however, "if negligence can be determined by resort to common knowledge ordinarily possessed by an average person, expert testimony as to standards of care is not essential); *see also* N.M.UJI 13-1101 ("The only way in which you may decide whether [Defendant] in this case possessed and applied the knowledge and used the skill and care which the law required of [it] is from evidence presented in this trial by [doctors or other health care providers] testifying as expert witnesses").

      The Court agrees with Defendants in that the source of the claimed legal duty in this case arises exclusively in the professional services context: at its crux, Kyle claims medical abandonment.  Absent testimony from a medical expert, a fact finder would be unaware of the standard of care applicable to a patient when a drug addiction treatment facility closes its business. *See* N.M. UJI 13-1115 ("A doctor's duty to a patient who is in need of care continues until the doctor has withdrawn from the case. A doctor cannot abandon the patient who is in need of continuing care. A doctor can withdraw by giving the patient **reasonable notice under the circumstances**") (emphasis added); and *Estate of Eric S. Haar v. Ulwelling*, 141 N.M. 252 (Ct.App. 2007) (discussing the Restatement (Second) of Torts § 314, the court noted that there was "no general duty to aid or protect others" unless "a special relationship exists involving

'treatment relationships, such as mental health professionals and their patients, and persons having direct custody and control over the [patient].'"). Under a patient abandonment theory, a determination of what constitutes "reasonable notice under the circumstances" requires Kyle to establish the appropriate standard of care in a drug addiction treatment facility, including as factors Kyle's mental and physical health before he started the SCTC program, during the program, and at the time the SCTC program closed its doors. Then, based on those factors, expert testimony is needed to establish that SCTC's conduct fell below the generally accepted standard of care to constitute patient abandonment.

The average fact finder would be at a loss here, being unaware of the known causes of relapse or rate of relapse among recovering drug addicts. This information is appropriately presented within the realm of expert knowledge and testimony. *See e.g., Estate of Joshua T. v. State*, 840 A.2d 768, 772 (N.H. 2003) (Because "[s]uicide is not easily explained or understood" and "[i]ts causes, prevention, triggers and warning signs cannot be readily calculated," expert testimony is required to establish causal link between suicide and alleged negligence in placing decedent in foster home).

Plaintiffs have not disclosed any experts. Further, Plaintiffs have withdrawn their medical negligence claim. Ex. C. In discovery, Plaintiffs further reiterated their position that they would not call any "expert witnesses" and identified Karen House as a "lay witness." Ms. House was Kyle's former therapist while he was at SCTC, and for a short time after his discharge. In their Answer to Interrogatory No. 23, Plaintiffs identified Ms. House as follows:

> Karen House, a former therapist and employee of Defendant San Cristobal Treatment Center, is expected to testify to such subjects including, but not limited to the following: (i) her knowledge of Defendants involvement in this case; (ii) her observations concerning Plaintiff Kyle Thistlethwaite's treatment at the facility in San Cristobal, as well as the treatment he received after the facility in San Cristobal closed; (iii) her personal knowledge surrounding the events and

decisions made in connection with the closing of the facility in San Cristobal, NM; (iv) any subject described in Ms. House's affidavit attached as an exhibit to Plaintiffs' Response in Opposition to Defendants' Motion to Strike; and (v) any other subject based upon her personal knowledge as a therapist and employee of the facility in San Cristobal, NM.

Defts' SOF 7.   In their motion, Defendants had anticipated that Plaintiffs would argue that summary judgment is improper because Kyle could rely on the testimony of Karen House, testifying as a "treating physician."   However, Plaintiffs have not argued this at all, because no response was filed.  Nevertheless, Defendants' position is based on an accurate understanding of the proper use of treating physician testimony.

Even if Kyle had relied on Ms. House's testimony as treating physician, that testimony would not have defeated Defendants' entitlement to summary judgment.  An opinion concerning the general medical standard of care within the community and the issue of causation is "classic expert testimony" which treating physicians are not qualified to present.  *See Richter v. Presbyterian Healthcare Services*, 326 P.3d at 64 (plaintiff was required to present expert testimony regarding the standard of care and whether doctor's conduct fell below that standard); *Parker v. Cent. Kansas Med. Ctr.*, 178 F.Supp.2d 1205, 1210 (D.Kan.2001) (concluding that physician's opinion as to the standard of care and causation was "expert testimony relating to treatment beyond that which was incidental to her personal care and treatment"); *Montoya v. Sheldon*, 286 F.R.D. 602, 613 (D.N.M., 2012) (treating physician testifying as a lay witness cannot testify to any opinions regarding causation under rule 701, because opinions regarding causation of a medical condition require "knowledge derived from precious professional experience," which is "by definition outside of Rule 701") (numerous citations omitted); *O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090, 1105 n. 14 (7th Cir.1994) (holding that treating physicians are subject to rule 702, because "we do not distinguish the treating physician

from other experts when the treating physician is offering expert testimony regarding causation").

Thus, Kyle would not be able to rely on the testimony of Ms. House to establish either the standard of care, whether it had been breached, or whether such a breached caused Kyle's alleged injuries.[5] Without expert testimony on these issues, Kyle has no chance of meeting the necessary elements in his negligence claim, nor does framing the claim as one of ordinary negligence transform the claim into something it is not. Defendants are entitled to summary judgment on Kyle's negligence claim.

## CONCLUSION

In sum, the Court finds and concludes that because Defendants have presented undisputed facts on Plaintiffs' negligence claims, and have also presented cogent arguments based on sound legal precedent, Defendants are entitled to summary judgment on Plaintiffs' negligence claims in Count Eight of the Complaint.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment on Plaintiffs' claims of Negligence **(Doc. 47)** in Count Eight of the Complaint is hereby GRANTED for reasons described in this Memorandum Opinion and Order.



UNITED STATES DISTRICT JUDGE

---

[5] Defendants represent that in their Answer to Interrogatory No. 23, Plaintiffs stated that they did not intend to have Ms. House offer any testimony about the standard of care. Doc. 47 at 16. The Court may assume, then, that Plaintiffs may well have intended to have Ms. House testify on the issue of causation, which is also out of evidentiary bounds for a treating physician.