UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KYLE THISTLETHWAITE,
PATRICIA THISTLETHWAITE, and
PAUL THISTLETHWAITE,

    Plaintiffs,

v.                                                      Case No. 14cv00138   WJ/CG

ELEMENTS BEHAVIORAL HEALTH,
INC., a foreign corporation,
TRS BEHAVIORAL CARE, INC.,
d/b/a THE RIGHT STEP,
a foreign corporation, and
SAN CRISTOBAL TREATMENT
CENTER, LLC, a foreign limited liability company,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**STRIKING PLEADINGS AS UNTIMELY**
**and**
**GRANTING DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY**

THIS MATTER comes before the Court sua sponte and upon Defendants' Motion to strike Expert Testimony of Karen House and John Tucker, filed February 6, 2015 **(Doc. 50).** The Court recently entered an Order to Show Cause why the Court should not strike Plaintiff's untimely responses to Defendants' motions to summary judgment. Defendants have filed several motions for partial summary judgment in this lawsuit, and three of the responses filed by Plaintiff's counsel are untimely, even after parties had agreed to an extension until March 2, 2015 for the filing of responses (*see* Doc. 53) and after Defendants had filed Notices of Briefing Complete when no response had been filed. The untimely responses are: (1) Doc. 57 (amended response to Defendants' motion for partial summary judgment on Breach of Contract Claim,

Doc. 48);[1] (2) Doc. 63 (response to motion for partial summary judgment on Plaintiff's claims of fraud, negligent misrepresentation, and tortious interference with contract, Doc. 49) and (3) Doc. 64 (response to motion for partial summary judgment on Defendants' motion to strike experts, Doc. 50).

I.   **Sanctions for Untimeliness of Resposnes**

Plaintiff's counsel has responded to the Court's Order to Show Cause, giving the following reasons for delay and contending that considered collectively, they constitute excusable neglect:

- heavy snow days in Taos the week before the extended deadline, which made it impossible for Plaintiff's counsel to travel to his office;
- the resignation of his paralegal the week prior to the deadline;
- an "unusually powerful and long lasting cold"; and
- the "sheer number and size of the pleadings to which he was responding."

A finding of excusable neglect requires both a demonstration of good faith and a reasonable basis for failing to comply with the specified time period. *Hammons v. Internat'l Playtex, Inc.*, 676 F.Supp. 1114, 1118 (D.Wyo. 1988) (citing *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290 (10th Cir. 1974)).  Courts look at various factors to determine whether the neglect is excusable: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 US. 380, 390-95 (1993), cited in *City of Chanute, Kan. v. Williams Natural Gas Co.*, .31 F.3d 1041, 1046 (10th Cir. 1994).  The question of whether neglect should be determined "on the basis of the common

---

[1] Defendants did not file a Notice of Briefing Complete prior to the filing of the response for this motion.

sense meaning of the two simple words applied to the facts which are developed." *Buckley v. U.S.*, 382 F.2d 611, 614 (10th Cir. 1997). Fault in the delay remains a "very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *City of Chanute, Kan.*, 31 F.3d at 1046.

The Court recognizes that Taos, New Mexico was recently hit with a winter storm that was severe enough to cripple transportation, particularly if one lives off a dirt road as does Plaintiff's counsel. The Court is also not unsympathetic to the difficulties of meeting court deadlines when one is ill. However, one cannot ignore the fact that counsel opted *not* to seek another extension from opposing counsel even though there was time to do so, because he felt that "the generosity and graciousness of Defendants' counsel had its limits with respect to another extension, and to ask for another extension at that point seemed futile." Doc. 68 at 2. However, if opposing counsel refused to allow another extension, Plaintiff's counsel had another fail-safe option at that point, which was to seek the Court's intervention for additional time to respond. Obviously, counsel decided it would be better to beg for forgiveness than ask permission, and now faces the consequences of doing so. Also, Plaintiff's counsel has only himself to blame for the sheer number of responses he was required to file, as he is the one who alleged numerous claims in this lawsuit some of which were totally devoid of any merit and have no bearing on what this case is really about and that is a contract dispute. *See* Doc. 70 at 7, n.4 (noting that the Court "would go as far to say that this lawsuit has all the earmarks of a contract dispute—and nothing more"). For these reasons, the Court finds that the delay was within the reasonable control of Plaintiff's counsel because he could have requested an extension of a few days, and almost assuredly would have obtained one from the Court had he asked.

Plaintiff's counsel suggests various alternatives as sanctions for the late responses, *see* Doc. 68 at 5, one of them being to spare Plaintiff's less-tardy response on the breach of contract claim (Doc. 57) and allow this to be considered by the Court, while striking the other two responses (Docs. 63 and 64). The Court favors this alternative for several reasons. First, in Document 64, Plaintiff's counsel has already conceded to Defendants on the motion for partial summary judgment regarding the striking of expert testimony. Second, parties have recently agreed to dismiss Count II, tortious interference with contract, which is part of Defendant's motion for partial summary judgment (Doc. 49) to which Plaintiff responded in Document 63 (*see* Doc. 71). Thus, Plaintiff is not surrendering much on those issues. Third, given Plaintiff's track record thus far in defending against the dismissal of non-contract claims, it is not unlikely that Defendants will also prevail in the dismissal of the other claims in that motion (fraud, negligent misrepresentation, and punitive damages). *See* Doc. 69 (Mem. Opin. & Order granting summary judgment on Plaintiff's claims of Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Breach of Implied Contract) & Doc. 70 (Mem. Opin. & Order granting summary judgment on negligence claim).

Accordingly, the Court finds that Plaintiffs' responses **Docs. 63 and 64** (responses to Docs. 49 and 50, respectively), are hereby STRICKEN for reasons described in this Order.

## II.     Defendants' Motion to Strike Expert Testimony (Doc. 50)

Based on the foregoing, the pending motions in this case are fully briefed. The Court can, at this point, grant Defendants' motion to strike expert testimony of Karen House and John Tucker. Ms. House was Kyle Thistlethwaite's primary counselor at the facility in San Cristobal, and Mr. Tucker is the Executive Director of the facility. As the Court noted above, Plaintiff's counsel has responded (albeit untimely) that he does not object to the striking of any expert

4

testimony from these witnesses. *See* Doc. 64 at 2 ("Plaintiffs concede that any expert testimony from Karen House and John Tucker would be properly excluded pursuant to Fed. R. Civ. P. 37(c)(1) and Fed. R. Evid. 702"). Plaintiff's counsel intends to introduce these witnesses' testimony as lay testimony under Fed.R.Evid. 701 based on their own perception and knowledge. Therefore, the Court hereby GRANTS Defendants' Motion to Strike Expert Testimony of Karen House and John Tucker **(Doc. 50)**.[2]

### III.    Other Pending Motions

The Court will consider Defendants' Motion for Partial Summary Judgment on remaining claims (Doc. 49) solely on Defendants' pleading, based on the Court's findings in this Order. The Court will also consider Defendants' Motion for Partial Summary Judgment on Plaintiff's Breach of Contract Claim (Doc. 48) separately, as Defendants have already filed a reply to this motion.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' responses **Docs. 63 and 64** (responses to Docs. 49 and 50, respectively), are hereby STRICKEN for reasons described in this Order;

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Expert Testimony of Karen House and John Tucker **(Doc. 50)** is hereby GRANTED.

_____
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff's counsel essentially agrees that expert disclosures under Rule 26(a)(2)(A) were necessary in order to allow Ms. House or Mr. Tucker to testify on anything other than their own perceptions or knowledge; yet counsel asks the Court to deny Defendants' motion. *See* Doc. 64. It is not clear where Plaintiff's counsel disagrees with Defendants on the issue; but since the Court has stricken the response, the question is moot. Further, the Court has already determined that Plaintiffs cannot rely on Ms. House's testimony to establish the standard of care or whether it has been breached in this instance, as such testimony is considered expert testimony and outside the scope of the testimony of a treating physician. *See* Doc. 70 at 14-15 (Mem. Opin. & Order).